**UNITED STATES of America**

v.

**Joseph STASSI et al., Defendants.**

**No. S75 Cr. 502.**

United States District Court,
S. D. New York.

April 23, 1976.

Robert B. Fiske, Jr., U.S. Atty., by James E. Nesland, Asst. U.S. Atty., New York City, for plaintiff.

Arnold E. Wallach, New York City, for defendants.

MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This is an application pursuant to Rule 38(a)(2) of the Federal Rules of Criminal

Procedure for a recommendation that the defendant Joseph Stassi be transferred from the United States Penitentiary at Marion, Illinois to some place near New York. The purpose of the application is to make it more convenient for newly retained appellate counsel to confer with the defendant.

Rule 38(a)(2) provides in pertinent part:

". . . If not stayed, the court may recommend to the Attorney General that the defendant be retained at, or transferred to, a place of confinement near the place of trial or the place where his appeal is to be heard, for a period reasonably necessary to permit the defendant to assist in the preparation of his appeal to the court of appeals."

For the reasons which follow, the application is denied.

The application is not supported by an affidavit of the defendant himself. However, his newly retained attorney makes an eloquent plea on the theory that he could not adequately prepare the appeal without frequent contact with his client. Otherwise, he asserts that he will "suffer from the same impediments arising from a cold record that an appellate court does." My personal views as to that argument are well known, having been published back in 1959 [1] and mentioned on the record at an earlier hearing in this case.[2] I then observed that the less appellate counsel was influenced by matters not apparent from the very record before the appellate court the better his (or her) chances of making an effective appeal to that tribunal. However, a defendant surely does not have to take the trial judge's advice as to the best way of getting a reversal, so if this were an ordinary case, I should in all probability exercise my discretion in defendant's favor. This, however, is not an ordinary case. Indeed, it is one in which it would be most inappropriate for me to make any recommendation to the Attorney General with respect to the defendants' custodial arrangements.

In the first place, Joseph Stassi has been convicted of having organized and controlled a major heroin importing operation from inside prison walls. The Attorney General—acting through the Bureau of Prisons—has therefore a peculiar responsibility to prevent a recurrence of that unseemly spectacle.

In the second place, the defendant is a distinct security risk. It will be recalled that at the trial he caused a considerable number of his fellow prisoners to be transported from Atlanta to aid in his defense, one of whom attempted a jail break by boring through the wall of the Metropolitan Correctional Center. Also, while Mr. Stassi was awaiting transfer out of the Metropolitan Correctional Center after being sentenced, a jail delivery was attempted which the authorities (with to be sure no legal evidence upon which to base their conclusions) suspected was aimed at releasing Mr. Stassi himself. At the time, the prison authorities advised the court of their alarm and arranged to transfer Mr. Stassi to a more secure facility.

Finally, there is no reason to suppose that it would impose any financial burden on the defendant to pay any fees that might be required to induce his attorney to make as many trips to Illinois as might seem advisable. The evidence at trial showed the defendant to have been engaged in a multi-million dollar enterprise. · The moving affidavit—though artfully phrased to suggest lack of means—carefully avoids any direct statement that Mr. Stassi is without adequate funds.

Under all these circumstances, therefore, the court will make no recommendation to the Attorney General, and the defendant's application is in all respects denied.

SO ORDERED.

1. Knapp, "Why Argue an Appeal? If So, How?"—The Record of the Association of the Bar of the City of New York, Vol. 14, no. 8 (1959).

2. Hearing, March 4, 1976.